UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| FLEXCEL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:06-cv-39-WGH-RLY |
| ) | |
| COS 404, INC. f/k/a CREATIVE ) | |
| OFFICE SEATING, INC.; HASKELL ) | |
| OFFICE, LLC; and ALAN J. ROBINS, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS
OR IN THE ALTERNATIVE TO TRANSFER TO
THE EASTERN DISTRICT OF PENNSYLVANIA**

**I.   Introduction**

This matter is before the Court on Defendants' Motion to Dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), (3), and (6) or in the Alternative to Transfer the Case to the United States District Court for the Eastern District of Pennsylvania filed March 30, 2006.  (Docket Nos. 18-19).[1] Plaintiff, flexcel, Inc., filed its Memorandum in Opposition on May 1, 2006 (Docket No. 23), and Defendant's Reply Memorandum was filed on May 15, 2006 (Docket No. 27).

---

[1] The parties consented to Magistrate Judge jurisdiction in this case in their Case Management Plan filed May 22, 2006.  (Docket No. 34).  District Judge Richard Young entered an Order of Reference on May 23, 2006.  (Docket No. 35).

## II. Factual and Procedural Background

Plaintiff, flexcel, Inc., is an Indiana company with its headquarters and principal place of business in Jasper, Indiana. (Complaint, ¶ 1). Defendants, COS 404, Inc., formerly known as Creative Office Seating, Inc. ("Creative"), Haskell Office, LLC ("Haskell"), and Alan Robins ("Robins"), are all residents of Pennsylvania. (Complaint, ¶¶ 3, 4). Plaintiff's predecessor in interest, Kimball International Manufacturing, Inc. ("Kimball"), and/or Kimball's affiliates have done business with Creative for a number of years under various agreements. (Complaint, ¶ 5; Affidavit of Jeffrey L. Fenwick ("Fenwick Aff."), ¶¶ 2-6).

On October 15, 2002, Plaintiff, Creative, and Haskell entered into a Product Sale Agreement ("PSA") which, by its express terms, superceded all prior agreements between or among Creative, Haskell, Kimball, or Kimball's affiliates. Creative and Robins, in conjunction with the PSA, each executed personal Guaranties (hereinafter "the Guaranties"). The Creative Guaranty secured performance by Haskell, while Robins' Guaranty secured performance by both Creative and Haskell. (Complaint, ¶¶ 7-8; Fenwick Aff., ¶¶ 7-9).

In entering into the PSA, the parties agreed to a choice of law provision and a forum selection clause which would govern any dispute arising out of the PSA. Section 13 of the PSA specifically provides:

> This Agreement shall be governed by the laws of the State of Indiana. . . . Any action or proceeding seeking to enforce the terms of this Agreement, or based on any right arising out of this Agreement must be brought in the appropriate court located in Dubois County, Indiana, or . . . in the Federal District Court for the Southern District of

> Indiana located in Evansville, Indiana.  The parties hereto consent to the jurisdiction and venue of said courts.

(PSA, § 13).[2]  Additionally, the parties provided a particular way for terminating and modifying the PSA.  Section 5 of the PSA explains that the agreement is in effect "indefinitely . . . unless earlier terminated under the provisions set forth [in section 6]," including notice, insolvency, bankruptcy or receivership.  (PSA, §§ 5-6).  Section 10 of the PSA explains that any change or modification of the agreement shall not be "valid unless it is made in writing and signed by both parties."  (PSA, § 10).

Plaintiff alleges that over the course of dealings between it, Creative, and Haskell under the PSA, Creative and Haskell fell delinquent in paying for goods delivered and services rendered in compliance with the payment terms as set forth in the PSA.  (Fenwick Aff., ¶ 10).  Creative and Haskell also asserted the existence of alleged problems with certain of the goods and services and also asserted the existence of claims for credits due, which if allowed, would provide for a reduction in the amounts due from Creative and Haskell to Plaintiff.  (Fenwick Aff., ¶¶ 10-11).

After discussion and negotiation, the parties agreed to liquidate the receivables due to Plaintiff from Creative and Haskell, taking into account alleged claims for credits due Haskell and Creative.  The agreements were memorialized in Promissory Notes (hereinafter "the Notes") executed by Haskell and Creative on June 11, 2004.  (Complaint. ¶¶ 9, 11; Fenwick Aff., ¶¶ 12-15).  Both the Haskell Note and the Creative Note have identical forum selection clauses which state that:

---

[2]The Guaranties contain similar choice of law provisions and forum selection clauses.  (Creative Guaranty at 2; Robins Guaranty at 2).

> The undersigned expressly agrees that all disputes, controversies or claims arising hereunder, and the interpretation of any of the provisions or the performance called for hereunder shall be governed and determined by the laws of the State of Pennsylvania and any suit or action at law or in equity involving a dispute, controversy or claim arising hereunder shall be brought and maintained by either party in a Federal or State Court located in the State of Pennsylvania only.

(*See* Haskell Note at 2; Creative Note at 2). However, only Creative and Haskell respectively signed the Notes. (Haskell Note at 2; Creative Note at 2). Plaintiff did not sign either Note. Creative and Haskell ceased making installment payments on the Notes commencing with the March 2005 installments. (Complaint, ¶ 12; Fenwick Aff., ¶ 21).

Plaintiff initiated this action on January 21, 2006, arguing that Creative, Haskell, and Robins were in default on their obligations to Plaintiff pursuant to the PSA, the Guaranties, and the Notes, and that pursuant to those agreements, the Defendants were liable for damages including interest and attorneys' fees.

Defendants filed their motion to dismiss claiming that the lawsuit should be either dismissed or transferred to the Eastern District of Pennsylvania. Defendants argue that this Court lacks jurisdiction to hear this lawsuit because the PSA and Guaranties are superceded by the Notes. And, according to Defendants, because the Notes contain forum selection clauses that call for suit to be brought in Pennsylvania, the Court must either grant the motion to dismiss or transfer the suit to Pennsylvania. Plaintiff responded by arguing that the PSA was not superceded by the Notes because the Notes did not constitute a novation of the PSA under Indiana law. (Plaintiff's Answer at 5-8). In addition, Plaintiff points out that it did not sign

either of the Notes, and it should, therefore, not be bound by the forum selection clause.

Having determined that there are significant factual disputes, the Court concludes that Defendants' motion must be **GRANTED, in part,** and **DENIED, in part.**

### III.     Legal Standard

When ruling on a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears a burden of demonstrating the existence of jurisdiction. *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 548 (7th Cir. 2004). In diversity cases, a federal court must determine if a court of the state in which it sits would have personal jurisdiction over the defendant. *Id.*

When ruling on a Rule 12(b)(3) motion to dismiss for improper venue, the district court is not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment. *Continental Cas. Co. v. American Nat. Ins. Co.,* 417 F.3d 727, 733 (7th Cir. 2005). The district court may hold an evidentiary hearing to resolve material disputed facts, and the court may weigh evidence, assess credibility, and make findings of fact that are dispositive on the Rule 12(b)(3) motion. *See Murphy v. Schneider National, Inc.,* 362 F.3d 1133, 1140 (9th Cir. 2004) (citing *American Nat. Ins. Co.,* 417 F.3d at 733*).* These factual findings will be entitled to deference. *Id.*

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations contained in the complaint, as well as the inferences reasonably drawn therefrom. *See Baxter by*

*Baxter v. Vigo County School Corp.,* 26 F.3d 728, 730 (7th Cir. 1994). A dismissal is only appropriate if the plaintiff can establish no set of facts, even if hypothesized, consistent with the allegations of its complaint that would entitle it to relief. *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994), *cert. denied,* 516 U.S. 1159 (1996). Moreover, the court must only examine the complaint, and not the merits of the lawsuit. *See Autry v. Northwest Premium Services, Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998).

### IV.  Analysis

This Court must resolve the following issues: (1) whether the Complaint alleges a cause of action only under the Notes or whether it alleges a cause of action under the PSA or the Guaranties; (2) whether the Creative Note and Haskell Note constituted a contract novation so that the Notes supercede the PSA and the Guaranties; (3) whether the Notes materially altered the PSA so that the Guaranty by Robins was discharged; and (4) whether the causes of action against Creative and Haskell based on the Notes must be bifurcated and removed to the Eastern District of Pennsylvania.

**(a)  The Complaint does state a cause of action based on the PSA and the Guaranties.**

Defendants argue, as an initial matter, that Plaintiff filed suit alleging only a breach of the Notes, and that the forum selection clause in the Notes alone should control the parties' actions. (Defendants' Motion To Dismiss Lawsuit or in the Alternative to Transfer to the Eastern District of Pennsylvania [hereinafter

"Defendants' Motion") at 5). However, after examining the Complaint, the Court finds Defendants' claim unconvincing. The Complaint clearly states:

> 15. By terms of the Creative Guaranty, Creative is also liable for amounts due and owing on the Haskell Note.
> 16. By terms of the Robins Guaranty, Robins is liable for all amounts due and owing by Creative and Haskell.
> 17. Pursuant to the terms of the PSA, the Creative Note, the Haskell Note, the Creative Guaranty, and the Robins Guaranty, defendants are liable for flexcel's reasonable costs of collection and/or enforcement, including reasonable attorney fees.

(Complaint, ¶¶ 15-17). Therefore, Plaintiff clearly has stated causes of action that rely on the PSA and the related Guaranties.

### (b) Plaintiff brought this suit in Indiana pursuant to a valid forum selection clause.

The Court's next task is to determine if suit was properly brought in Indiana pursuant to a valid forum selection clause. The United States Supreme Court has explained that forum selection clauses "are prima facie valid and should be enforced unless the enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972). A forum selection clause is reasonable unless the resisting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud and overreaching." *Id.* at 15. Because Plaintiff alleges causes of action based on both the PSA and the Guaranties, the forum selection clauses in all three of those documents are relevant. And, in this case, Defendants did not present any evidence to suggest that the forum selection clauses in the PSA or Guaranties are unreasonable. Therefore, the forum selection clauses calling for any suit based on either the PSA or the Guaranties to be brought in Indiana are

*prima facie* valid.  Hence, because:  (1) the Complaint states causes of action based on the PSA and the Guaranties; and 2) the forum selection clauses in those documents are *prima facie* valid, an examination is necessary to determine whether the Notes amount to a novation of the PSA or whether the Notes amount to a material alteration of the PSA.

### (c)     The Notes did not amount to a novation of the PSA.

Defendants' next argument is that all past agreements, including the PSA, the Creative Guaranty, and the Robins Guaranty were superceded by the Notes so that the forum selection clause in the Notes, calling for the use of a Pennsylvania forum, is controlling. (Defendants' Motion at 8).  In order for the Notes to have superceded the PSA and the Guaranties, a novation must have occurred.  "A novation is a new contract made with the intent to extinguish one already in existence." *Rose Acre Farms, Inc. v. Cone,* 492 N.E.2d 61, 68 (Ind. Ct. App. 1986).  The Indiana Court of Appeals has explained that novation of a prior contract requires:  (1) a valid existing contract; (2) the agreement of all parties to a new contract; (3) a valid new contract; and (4) an extinguishment of the old contract in favor of the new one. *SSD Control Technology v. Breakthrough Technologies,* 685 N.E.2d 1136, 1138 (Ind. Ct. App. 1997).

In this case, the first element of a novation is clearly met; the PSA was a valid existing contract between Plaintiff, Creative, and Haskell at the time that the Notes were executed.  However, Defendants are simply unable to demonstrate a novation in this instance, as two of the remaining elements of a novation are lacking.

First, Defendants cannot show the existence of a new contract. Generally, a promissory note is a negotiable instrument, not a contract, under Indiana's version of the Uniform Commercial Code. IND. CODE § 26-1-3.1-104; *Payne v. Mundaca Inv. Corp.,* 562 N.E.2d 51, 55 (Ind. Ct. App. 1990). A promissory note is a written promise by one person to pay another person, absolutely and unconditionally, a certain sum of money at a specific time. *Smith v. Union State Bank,* 452 N.E.2d 1059, 1062 (Ind. Ct. App. 1983). According to § 26-1-3.1-106 of the Indiana Code, a promise is unconditional unless it states: "(1) an express condition to payment; (2) that the promise or order is subject to or governed by another writing; or (3) that rights or obligations with respect to the promise or order are stated in another writing." Only unconditional promissory notes are negotiable. IND. CODE § 26-1-3.1-104(a). In this case, Defendants have provided no evidence that suggests that the Notes amounted to *conditional* promises. Instead, they are the types of ordinary promissory notes that Indiana courts have concluded are not contracts. *See Indianapolis Morris Plan Corp. v. McAtee,* 125 N.E.2d 261, 263 (Ind. Ct. App. 1955); *Crist v. Jacoby,* 38 N.E. 543, 544 (Ind. App. 1894)(holding that "[t]he note is not the contract of sale. It is simply an ordinary promissory note, which does not in any way mention or refer to the sale.").

Second, even if the Notes were new contracts, Defendants cannot show an extinguishment of the PSA and the Guaranties in favor of the Notes. The PSA clearly states that "[n]o change or modification of this Agreement shall be valid unless it is made in writing and signed by both parties." (PSA, § 10). Only Creative and Haskell signed the Notes, and Plaintiff did not sign either of them. So, without compliance

with § 10 of the PSA, there was no clear indication of an intent to extinguish the PSA.  Additionally, the second paragraph of each of the Notes clearly states that "[t]his note supercedes all prior Notes and accounts receivable and is not in addition to amounts reflected in prior Notes and flexcel's accounts receivable." (Creative Note at 1; Haskell Note at 1).  Thus, Defendants clearly declared that the Notes only superceded all prior notes and accounts receivable; not *any* contracts or agreements.  The Court does not find any language in the Notes that otherwise suggests that they would supercede the PSA.  Therefore, this Court does not find "an extinguishment of the old contract in favor of the new one."

Because Defendants have failed to demonstrate two elements of a novation, the Court concludes that the Notes do not supercede the PSA and the Guaranties.[3]

### (d)   Factual disputes remain regarding whether the Notes were a material alteration of the PSA.

Defendants' next argument is that the Guaranties were discharged because creation of the Notes amounted to a material alteration of the PSA so that Plaintiff

---

[3]Defendants make two secondary arguments as to why the forum selection clause in the Notes must be honored instead of those in the PSA and the Guaranties.  First, Defendants claim that "[a]n examination of the Promissory Notes clearly demonstrates that Plaintiff drafted them." (Defendants' Motion at 8).  However, Defendants did not present any evidence to support this claim.  And, even if the Notes were drafted by Plaintiff, that fact alone does not demonstrate an unequivocal intent to extinguish the PSA or the Guaranties.  Defendants' second argument is that Plaintiff acknowledged the Notes were a product of negotiation between both parties.  Defendants support this argument by pointing to Fenwick's Affidavit which stated: "After discussion and negotiation, the parties agreed to liquidate the receivables due to flexcel from Creative and Haskell, taking into account alleged claims for credits due Haskell and Creative." (Fenwick Aff., ¶ 12).  The agreements were memorialized in promissory notes executed by Haskell and Creative.  However, the fact that the Notes were a product of discussion does not, in and of itself, suggest that the Notes supercede the PSA.  And, Plaintiff also explicitly denies that any discussion occurred or agreement was reached that the Notes would constitute a novation of the PSA, and Plaintiff denies that it was consulted by Defendants prior to insertion of the forum selection clause in the Notes.  (Fenwick Aff., ¶¶ 16-17).

cannot maintain a cause of action against Robins in any jurisdiction. (Defendants' Motion at 10-12). The Court, having examined the relevant documents and case law, concludes that significant factual disputes remain concerning whether or not the Notes materially altered the parties' PSA.

Defendants argue that the credit relationship between all parties dramatically changed under the Notes; there was no continuing sales relationship, no pricing, and no insurance or indemnification arrangements. (Defendants' Motion at 10-11). However, significant factual disputes remain regarding whether this truly was a material alteration.

A material alteration which will effect a discharge of the guarantor must be a change which alters the legal identity of the principal's contract, substantially increases the risk of loss to the guarantor, or places the guarantor in a different position. *Yin v. Society Nat. Bank Indiana,* 665 N.E.2d 58, 64 (Ind. Ct. App. 1996). In the instant case, the Notes do not appear to have changed the creditor-debtor relationship between the Plaintiff and Defendants. Nor do they appear to have substantially increased the risk of loss to the guarantors or placed them in a different position.[4]

---

[4]Defendants are correct that when parties cause a material alteration of an underlying obligation without the consent of the guarantor, the guarantor is discharged from further liability whether the change is to his injury or benefit. *Sweetwater Coffee,* 744 N.E.2d at 586; *see also Yin,* 665 N.E.2d at 64. However, in this case, Robins is an individual who is an official of both Creative and Haskell. (PSA at 7; Creative Guaranty at 3; Robins Guaranty at 3; Creative Note at 2; Haskell Note at 2). Robins alone signed all of these documents on behalf of Defendants; he is President of Creative and Member of Haskell, LLC. (PSA at 7). Therefore, the Court concludes that, unless Defendants provide evidence to the contrary, Robins must have known what effect signing the Notes would have had because he signed them.

Additionally, the Guaranties themselves pose a significant obstacle to Defendants' theory that the Notes materially altered the PSA. A guaranty is defined as "a promise to answer for the debt, default, or miscarriage of another person." *S-Mart, Inc. v. Sweetwater Coffee Co., Ltd.,* 744 N.E.2d 580, 585 (Ind. Ct. App. 2001).[5] There are two Guaranties that are relevant to this case; one made by Creative guaranteeing the debts of Haskell (*see* Creative Guaranty), and another individually made by Robins guaranteeing the debts of both Creative and Haskell (*see* Robins Guaranty). The Guaranties used the same language and were both signed by Robins. (Creative Guaranty at 3; Robins Guaranty at 3). The Guaranties both stated:

> . . . the undersigned hereby unconditionally guarantees the full and prompt payment, when due, whether by acceleration or otherwise, together with all reasonable costs, costs of collection, expenses and attorneys' fees, if any, and *past, present or future* accounts, *notes,* bills, or invoices rendered to Debtor by flexcel. . . .
>
> \* \* \* \* \*
>
> Furthermore, flexcel may, at any time and from time to time, without affecting or impairing the obligation of the undersigned to flexcel, do any of the following: (a) renew or extend any Liabilities (whether hereunder or under a *separate instrument,* . . . (c) *modify or change any terms concerning the payment of the Liabilities or interest thereon;* . . . or (f) *make any immaterial or material modifications or any immaterial or material alterations to the terms and conditions of the Liabilities.*

(Creative Guaranty at 1; Robins Guaranty at 1)(emphasis added).

---

[5]The rules governing the interpretation and construction of contracts generally apply to the interpretation and construction of a guaranty. *Id.*; *see also Kruse v. Nat'l Bank of Indianapolis,* 815 N.E.2d 137, 144 (Ind. Ct. App. 2004). The extent of a guarantor's liability is determined by the terms of his or her contract. *Sweetwater Coffee*, 744 N.E.2d at 585; *Kruse,* 815 N.E.2d at 145. The terms of a guaranty should neither be so narrowly interpreted as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within its terms. *Sweetwater Coffee,* 744 N.E.2d at 585; *Kruse,* 815 N.E.2d at 145.

These Guaranties both appear to be continuing and unconditional guaranties. (Creative Guaranty at 1; Robins Guaranty at 1). A continuing guaranty is defined as a guaranty that "contemplates a future course of dealing encompassing a series of transactions. . . . A continuing guaranty covers all transactions, including those arising in the future, which are within the contemplation of the agreement." *Sweetwater Coffee,* 744 N.E.2d at 585. The language of the Guaranties suggests that Plaintiff can collect Haskell's debts from Creative and both Creative and Haskell's debts from Robins, and the Guaranties suggest that these debts may arise out of future notes. Examining the language of the Guaranties alone, the Court is left with the impression that the Guaranties clearly contemplated the making of future notes. Absent evidence from Defendants that demonstrates why these Notes are different from the type of future notes contemplated by the Guaranties, the Court cannot conclude that the Notes were outside the scope of the Guaranties.

Therefore, because Defendants have failed to provide evidence that the Notes amounted to a material alteration of the PSA, and because Defendants have failed to explain why the Notes are not the types of notes contemplated by the Guaranties, Defendants' motion must be **DENIED** with regard to the claims based on the PSA and Guaranties.

### (e) The claims based on the Notes must be bifurcated from the other claims and transferred to the Eastern District of Pennsylvania.

Although the Complaint states valid causes of action based on the PSA and the Guaranties, it also states causes of action based on the Notes. And, the Notes contain forum selection clauses that call for suit to be brought in Pennsylvania.

Therefore, the Court must determine if these causes of action must be bifurcated and the claims based on the Notes removed to the Eastern District of Pennsylvania.

If a suit is brought in one district it may be transferred to another one for reasons of *forum non conveniens*.  This is especially true when a forum selection clause calls for suit to be brought in a different forum than where it was actually brought.  Hence, a forum selection clause will be honored, and suit transferred, unless:  (1) the forum selection clause's incorporation into the contract was the result of fraud, undue influence, or overwhelming bargaining power; (2) the forum selected is so gravely difficult and inconvenient that plaintiff will essentially be deprived of its day in court; or (3) the enforcement of the forum selection clause would contravene a strong public policy of the forum in which the suit is brought. *AAR Intern. Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 525 (7th Cir. 2001).

In this case, Plaintiff argues that it was unaware of the forum selection clause. However, it began accepting payments from Creative and Haskell based on the terms of the Notes and now seek to enforce the Notes.  Nothing in plaintiff's arguments suggest that the forum selection clauses were the product of fraud, undue influence, or overwhelming bargaining power.  Plaintiff has also failed to demonstrate that enforcing the Notes in Pennsylvania would be gravely difficult or that doing so would upset some public policy of Indiana.

Therefore, the Court makes the following conclusions:  (1) the claims as to Haskell based on the Haskell Note (Complaint, ¶¶ 18-20) must be transferred to the Eastern District of Pennsylvania; and (2) the claims as to Creative based on the

Creative Note (Complaint, ¶ 21) must be transferred to the Eastern District of Pennsylvania.

## V.     Conclusion

For the reasons outlined above, Defendants' Motion To Dismiss Lawsuit or in the Alternative to Transfer to the Eastern District of Pennsylvania is **GRANTED, in part,** and **DENIED, in part.**  This Court will retain jurisdiction as to all issues except the claims as to Haskell based upon the Haskell Note (Complaint, ¶¶ 18-20) and the claims as to Creative based upon the Creative Note (Complaint, ¶ 21).  These excepted claims are **DISMISSED, without prejudice,** to their refiling in the appropriate Pennsylvania court.

**SO ORDERED.**

**Dated:**  September 15, 2006

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Electronic copies to:**

James E. Carlberg
BOSE MCKINNEY & EVANS, LLP
jcarlberg@boselaw.com

Cathy Elliott
BOSE MCKINNEY & EVANS
celliott@boselaw.com

Ronald L. Daugherty
PELINO & LENTZ P.C.
rldaugherty@pelino.com

R. Brock Jordan
RUBIN & LEVIN, PC
brock@rubin-levin.net

Patrick J. Doran
PELINO & LENTZ PC
pjdoran@pelino.com